# EXHIBIT A





JUN 1 8 2021

JAMES M. KIM, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: L. Perdigao, Deputy

1  MATTHEW RIGHETTI (SBN: 121012)
2  matt@righettilaw.com
   **RIGHETTI GLUGOSKI, P.C.**
3  The Presidio of San Francisco
   220 Halleck Street, Suite 220
4  San Francisco, CA 94129
5  Tel: (415) 983-0900
   Fax: (415) 397-9005
6
   Attorneys for Plaintiff and the Proposed Class
7

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## MARIN COUNTY

| | |
|---|---|
| AMY WYNNE, individually, and on behalf of a class of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>AUDI OF AMERICA, and DOES 1-50 inclusive,<br><br>Defendants. | Case No. CIV **2 1 0 2 4 5 0**<br><br>CLASS ACTION<br><br>**COMPLAINT FOR:**<br><br>(1) NEGLIGENCE<br>(2) VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (Bus. & Prof. Code, § 17200)<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Amy Wynne brings this lawsuit against Audi of America on behalf of herself and all others similarly situated ("Class" or "Class Members") for violation of their privacy rights. Plaintiff alleges, upon personal knowledge as to her own actions, and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1. Audi of America is the business of selling, leasing and repairing automobiles. Since at least 2014, Audi of America employed a vendor to market to buyers and interested buyers. (Audi of America and its vendor are collectively referred herein as "Defendant" or

"Audi.") Audi was entrusted with personal identifiable information ("PII")[1] of Audi customers and potential customers (collectively, "Customers").

2. Between August 2019 and May 2021, Audi was the target of a massive data breach in which approximately 3.3 million Customers were subject to an unauthorized access and exfiltration, theft, or disclosure of their PII ("Data Breach"). Outside parties accessed a trove of personal details about Defendant's Customers—such as names, home and business addresses, emails addresses, driver's license numbers, social security numbers, and other information – stored on one of Audi's servers. Audi maintained the highly sensitive PII in a form that was neither encrypted nor redacted.

3. In addition to violating the fundamental privacy rights of Plaintiff and Class Members, the Data Breach has caused them to suffer ongoing economic damages and other actual damages. Because of the Data Breach, they face an increased risk of identity theft and concomitant expenses associated with mitigating that risk. Plaintiff and Class Members require robust credit monitoring services and software to reasonably mitigate the danger of future identity theft and fraud.

4. Plaintiff brings this lawsuit on behalf of Class Members whose PII was compromised as a result of the Data Breach and Audi's failure to (i) implement and maintain reasonable security procedures and practices appropriate to the nature of the PII; (ii) disclose its inadequate security procedures and practices; (iii) effectively monitor its systems for security vulnerabilities; and (iv) failure to timely detect, report, and disclose the Data Breach.

5. Audi's conduct, as alleged herein, was negligent, constitutes an unfair business practice under California's Unfair Competition Law (Bus. & Prof. Code, § 17200) ("UCL").

## II. PARTIES

6. At all relevant times, Plaintiff Amy Wynne was and is a citizen of California, residing in Marin County. Wynne is a customer of Audi. She entrusted her PII to Audi.

---

[1] As used herein, the term "PII" is intended to include the definition of personal information provided under Civil Code sections 1798.140, subdivision (o), and 1798.81.5, subdivision(d)(1).

Wynne's PII was accessed and compromised as a result of the Data Breach. This resulted in an invasion of her privacy interests, loss of value of his PII, and has placed her at imminent, immediate, and continuing risk of further identity theft-related harm. Wynne has spent money on a credit monitoring service as part of a reasonable effort to mitigate against such harm and will continue to incur such expenses on an ongoing basis.

7. Defendant Audi of America is an entity doing business in California. Plaintiff is informed and believes and thereon alleges that Audi of America is a division of Audi AG which is a wholly owned subsidiary of Volkswagen Group. Audi of America is headquartered in Herndon, Virginia.

8. Plaintiff does not know the true names and capacities of Defendants sued herein as Does 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes that each of the Doe Defendants was in some manner legally responsible for the damages alleged below. Plaintiff will amend this Complaint to set forth the true names and capacities of these Defendants when ascertained, along with appropriate charging allegations.

9. Plaintiff is informed and believe, and thereupon allege, that each of Defendants designated herein as a Doe is responsible in some actionable manner for the events and happenings referred to herein, and caused injuries to Plaintiffs, as hereinafter alleged, either through said Defendants' conduct, or through the conduct of their agents, servants, employees. The term "Defendant(s)" as used in this Complaint includes both the named Defendant and Defendants sued under the fictitious names of Does 1 through 50, inclusive.

10. Plaintiff is informed and believes and therefore alleges that, at all times relevant to this action, Defendants, and each of them, were the agents, servants, employees, assistants, and consultants of each of their co-Defendants, and were, as such, acting within the course of and scope of the authority of their agency and employment, and that each and every Defendant when acting as a principal, was negligent and careless in the selection and hiring of each and every co-Defendant as an agent, servant, employee, assistant and/or consultant.

**III. JURISDICTION AND VENUE**

11.     This Court has personal jurisdiction over Audi because it does business in this jurisdiction. The claims of Plaintiff and the Class arise out of Audi's business activity in California and, at all times herein mentioned, Audi was performing services pursuant to contracts entered into and performed in California.

12.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or emanated from Marin County. Venue is also proper because Audi entered into a contract with Plaintiff in Marin County pursuant to which Audi was entrusted with the PII of Plaintiff and other Class Members. Venue is also proper under Business & Professions Code section 17203.

13.     This is a class action brought pursuant to Code of Civil Procedure section 382, and this Court has jurisdiction over the Plaintiff's claims because the amount in controversy exceeds this Court's jurisdictional minimum.

### IV. FACTUAL ALLEGATIONS

14.     Wynne is a customer of Audi. As such and during the relevant time period covered by this Complaint, she entrusted Audi with her PII as a part of her business transaction.

15.     On March 10, 2021, Audi was alerted that an unauthorized third party obtained customer PPI. A third party obtained PPI from or about customers and interested buyers from a vendor used by Audi, Volkswagen, and some authorized dealers in the United States and Canada. This included information gathered for sales and marketing purposes from 2014 to 2019. The data was obtained when the vendor left electronic data unsecured at some point between August 2019 and May 2021.

16.     According to the Notice of Data Breach sent by Audi, approximately 3.3 million individual customers and interested buyers were affected by the Data Breach.

17.     In the Notice of Data Breach, Audi reports the Data Breach occurred at some point between August 2019 and May 2021 and was not reported until June 17, 2018.

18.     As set forth in the Notice of Data Breach, the compromised PII of Plaintiff and the Class Members includes, without limitation, the following categories of highly sensitive information: (1) name; (2) home and business address; (3) email address; (4) driver's license

number; (5) social security number; (6) date of birth; (7) account and loan numbers; and (8) tax identification number.

19. The Data Breach subjected Plaintiff and the other Class Members to an unauthorized access and exfiltration, theft, or disclosure of their nonencrypted and nonredacted PII, including, but not limited to, PII that falls within the definition of subparagraph (A) of paragraph (1) of subdivision (d) of Civil Code section 1798.81.5.

20. The Data Breach resulted from Audi's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the PII. On information and belief, Audi breached its standard of care by failing to implement reasonable security procedures to adequately protect Class Members' PII—which was not password protected, redacted, or encrypted—from data breaches. Data breaches, such as this one, are commonly made possible through a vulnerability in a system or server.

21. As a result of Audi's lax security, outside parties have accessed Plaintiff's and Class Members' PII in a readily usable form that is potentially of great value to them. Plaintiff and Class Members are thus exposed to criminals seeking to use the PII for nefarious and illegal activities, such as identity theft schemes. Given the sensitive nature of the PII, Plaintiff and Class Members face an immediate, concrete, and ongoing risk of identity theft.

22. At all relevant times, Audi knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if its data security system was breached, including the significant costs, damages and harm that would be imposed on Plaintiff and the Class.

23. Over the past several years, large data breaches, such as the one that occurred here, have garnered widespread media attention and have been the focus of protective legislation and scrutiny by law enforcement and the media. Ignoring the known risk, Audi's approach to maintaining the security of the PII of Plaintiff and Class Members was well-below the standard of care.

24. As a result of the Data Breach, Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.

Plaintiff and the Class are also subject to a higher risk of phishing and pharming, where hackers exploit information they have already obtained in an effort to procure even more PII. Moreover, Plaintiff and the Class now run the risk of unauthorized individuals creating credit cards in their names, taking out loans in their names, and engaging in other fraudulent conduct using their identities. Further, Plaintiff and Class Members have experienced a loss of value of their PII as a result of the Data Breach. Given that Class Members are currently at risk of identity theft or credit fraud, prophylactic measures, such as the purchase of credit monitoring services and software, are reasonable and necessary to prevent and mitigate future loss.

*California Recognizes the Importance of Protecting PII*

25. The CCPA affords California residents security protections and rights to learn about and control how a business handles their personal information. The Legislature requires businesses to implement adequate standards to protect PII:

> It is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information.

(Civ. Code, § 1798.81.5, subd. (a)(1).)

26. The CCPA further endows on California residents the right to bring an action for statutory damages if their information is subject to a data breach that is "a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information." (Civil Code, § 1798.150.)

*PII Is Valuable to Hackers and Thieves*

27. Hackers and criminals recognize the value of PII. Identity thieves use stolen PII for a variety of crimes, including credit card fraud, phone or utilities fraud, and financial fraud. PII can also be sold on the dark web or used to clone a credit card.

28. Once hackers obtain access to PII, it can then be used to gain access to different areas of the victim's digital life, including bank accounts, social media, and credit card details. Other sensitive data may be harvested from the victim's accounts, as well as from those

belonging to family and friends.

29. Access to PII provides criminals further opportunity to hack into email accounts. Since most online accounts require an email address, not only as a username but also to verify accounts and reset passwords, a hacked email account can provide access to additional identity theft opportunities.

30. Hacked PII also allows thieves to obtain other personal information through "phishing." According to the Report on Phishing available on the United States, Department of Justice's website: "AT&T, a large telecommunications company, had its sales system hacked into, resulting in stolen order information including full names and home addresses, order numbers, and credit card numbers. The hackers then sent each customer a highly personalized e-mail indicating that there had been a problem processing their order and re-directing them to a spoofed website where they were prompted to enter further information, including birthdates and Social Security numbers."[2]

31. Industry experts have reported that one in every three people who is notified of being a potential fraud victim becomes one. In the case of a data breach, simply reimbursing a consumer for a financial loss due to identity theft and fraud does not necessarily make that individual whole. The Department of Justice's Bureau of Justice Statistics ("BJS") has found, "among victims who had personal information used for fraudulent purposes" a significant percentage of victims spent a month or more resolving problems, with some even taking more than year.[3]

32. A person whose PII has been obtained and compromised may not know or experience the full extent of identity theft or fraud for years. In addition, a victim may not become aware of fraudulent charges when they are nominal because typical fraud-prevention

---

[2] https://www.justice.gov/archive/opa/docs/report_on_phishing.pdf (accessed on August 24, 2020).

[3] "Victims of Identity Theft," U.S. Department of Justice, Dec 2013, available at https://www.bjs.gov/content/pub/pdf/vit12.pdf (accessed on August 24, 2020).

algorithms fail to capture such charges. Those charges may be repeated, over and over, without detection.

### *Annual Monetary Losses from Identity Theft are in the Billions of Dollars*

33. Losses from identity theft reached $21 billion in 2013. (*See* 2013 Javelin Strategies Identity Fraud Report.) According to the BJS, an estimated 17.6 million people were victims of one or more incidents of identity theft in 2014.

34. There often can be a time lag between the theft of PII and when the harm occurs or is discovered. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[4]

### *Plaintiff and Class Members Have Suffered Ongoing Damages*

35. As a direct and proximate result of the Data Breach caused by Audi's wrongful actions and inaction, Plaintiff and Class Members have been placed at an imminent and continuing risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate any actual or potential impact of the Data Breach. Plaintiff and Class Members now must reasonably incur the ongoing expense of surveilling their financial and personal records and monitoring. They are subject to a higher risk of phishing and pharming schemes, through which hackers exploit the ill-gotten PII to procure additional private information. In addition, Plaintiff and Class Members run the risk of unauthorized individuals creating credit cards in their names, taking out loans in their names, and engaging in other fraudulent conduct using their identities.

36. The Data Breach has caused Plaintiff and Class Members to suffer ongoing

---

[4] See GAO, Report to Congressional Requesters, at 33 (June 2007), available at http://www.gao.gov/new.items/d07737.pdf (accessed on August 24, 2020).

economic damages and other actual harm for which they are entitled to compensation, including, but not limited to, the following:

    (i)    lost or diminished value of PII;

    (ii)    out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII;

    (iii)    lost opportunity costs associated with attempting to mitigate the actual consequences of the data breach;

    (iv)    deprivation of rights under the UCL and CCPA; and

    (v)    an increased risk to their PII, which has been compromised and thus (a) is subject to criminal access and abuse; and (b) remains in Audi's possession and is subject to further unauthorized disclosures so long as Audi fails to undertake appropriate and adequate measures to protect the PII.

## V. CLASS ALLEGATIONS

37. Plaintiff bring this action on their own behalf and on behalf of a class of individuals pursuant to CCP 382. Plaintiff intends to seek certification of a class defined as follows:

> **All Audi of America's customers and interested buyers residing in California whose PII was accessed or otherwise compromised in the Data Breach, which, according to the Notice of Data Breach provided by Audi of America, occurred at some point between August 2019 and May 2021.**

Excluded from the Class are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest and all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out.

38. **Numerosity**. The members of the Class are so numerous that joinder of all Class Members is impractical. While the exact number of Class Members is unknown to Plaintiff at

1 this time, Defendant's Notice of Data Breach states that approximately 3.3 million individuals are involved. It is unknown at this time how many of those 3.3 million individuals are California residents but, on information and belief, Plaintiff alleges that the number of Class Members is at least in the tens of thousands. Class Members are readily identifiable from information and records maintained by Audi.

39. **Commonality and Predominance.** This action involves questions of law and fact common to Class Members that predominate over any questions affecting individual Class Members. These common questions of law and fact include, without limitation:

    a. When Audi actually learned of the Data Breach;

    b. Whether Audi adequately detected, disclosed and responded to the Data Breach;

    c. Whether Audi owed a duty to the Class to exercise due care in collecting, encrypting, password protecting, storing, safeguarding and/or maintaining their PII;

    d. Whether Audi implemented and maintained reasonable security procedures and practices appropriate to the nature of the PII;

    e. Whether Audi breached its duty of care;

    f. Whether Audi knew or should have known that they did not employ reasonable measures to keep Plaintiff's and Class Members' PII secure and prevent loss or misuse of that PII;

    g. Whether Audi adequately addressed and fixed the vulnerabilities that permitted the Data Breach to occur;

    h. Whether Audi caused Plaintiff and Class Members to incur damages;

    i. Whether Audi violated the law by failing to promptly notify Class Members that their PII had been compromised;

    j. Whether Plaintiff and the other Class Members are entitled to credit monitoring and other monetary relief;

    k. Whether Defendant violated California's UCL by failing to implement

      reasonable security procedures and practices;

  l. Whether Class Members are entitled to statutory damages, special or general damages, civil penalties and/or injunctive relief; and

40. **Typicality**: Plaintiff's claims are typical of those of other Class Members because all had their PII accessed and compromised as a result of the Data Breach, due to Audi's wrongful conduct, acts, or omissions.

41. **Adequacy**: Plaintiff's interests are not antagonistic and do not irreconcilably conflict with the interests of the Class. Plaintiff is represented by attorneys who are competent and experienced in consumer and privacy-related class action litigation.

42. **Superiority and Manageability**: A class action is superior to other available group-wide methods for the fair and efficient adjudication of this controversy because the individual damage and harm suffered by each individual Class Member may be relatively small compared to the expense and burden of prosecuting such an individual case, and the difficulty of discovering and remedying the wrongdoing of Audi. If individual Class Members were required to bring separate actions, courts would be confronted by a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case by case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

43. Audi has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or declaratory relief appropriate with respect to the Class as a whole.

44. Likewise, certain issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to:

  a. Whether Audi owed a legal duty to Plaintiff and the Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

b. Whether Audi breached a legal duty to Plaintiff and the Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

c. Whether Audi failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d. Whether Audi has failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

e. Whether Class Members are entitled to actual damages, statutory damages, credit monitoring or other injunctive relief, as a result of Audi's wrongful conduct.

45. Notice of the pendency of and any resolution of this action can be provided to the Class members by individual mailed notice or the best notice practicable under the circumstances.

**FIRST CAUSE OF ACTION**
[Negligence]

46. Plaintiff re-alleges herein the allegations contained in paragraphs 1 through 45, and allege against Defendant as follows.

47. Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, using, and protecting their PII from unauthorized third parties.

48. The duties owed by Defendant to Plaintiff and Class Members include, but are not limited to, the following:

a) To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII of Plaintiff and Class Members within its possession;

b) To protect PII of Plaintiff and Class Members in its possession by using reasonable and adequate data security practices and procedures; and

c) To implement practices and procedures to quickly detect and timely act on data breaches, including promptly notifying Plaintiff and Class Members of the data breach.

49. Defendant breached its duty owed to Plaintiff and Class Members. Defendant knew or should have known the risks of maintaining and storing PII and the importance of maintaining secure systems.

50. Defendant knew or should have known that its security procedures and practices did not adequately safeguard Plaintiff's and the other Class Members' PII.  Defendant also failed to timely detect the Data Breach and failed to encrypt, redact, and password protect the Class Members' PII.

51. Through Defendant's acts and omissions described in this Complaint, Defendant failed to provide adequate security to protect the PII of Plaintiff and the Class from being accessed and compromised.

52. Defendant breached the duties it owed to Plaintiff and Class Members in several ways, including:

    a)   Failing to implement adequate and reasonable security systems, protocols, and practices sufficient to protect Class members' PII, creating a foreseeable risk of harm;

    b)   Failing to comply with the minimum industry security standards for data security;

    c)   Failing to act despite knowing or having reason to know that Defendants' systems were vulnerable to attacks; and

    d)   Failing to timely and accurately disclose to Plaintiff and Class Members that their PII was captured, accessed, exfiltrated, stolen, disclosed, viewed, and/or misused.

53. Due to Defendant's conduct, Plaintiff and Class Members require, among other things, extended credit monitoring. The Data Breach creates an increased risk for identity theft and other types of financial fraud against the Class members. The consequences of identity theft are serious and long-lasting. There is a benefit to early detection and monitoring.

54. As a result of Defendant's negligence,  Plaintiff and Class Members suffered injuries and damages that include and/or may include: (i) the lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and/or recovery from

identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the data breach; (iv) the continued risk to their PII, which can be subject to further unauthorized access and disclosure; (v) future costs in terms of time, effort, and money that will be expended to prevent, monitor, detect, contest, and/or repair the impact of the PII compromised as a result of the Data Breach, including ongoing credit monitoring.

55. These injuries, which also include an invasion of privacy rights, were reasonably foreseeable given the history of security breaches of this nature. The injury and harm that Plaintiff and Class Members suffered was the direct and proximate result of Defendants' negligent conduct.

**SECOND CAUSE OF ACTION**
[Violation of California's Unfair Competition Law
Cal. Bus. & Prof. Code §17200 – Unlawful Business Practices]

56. Plaintiff re-alleges herein the allegations contained in paragraphs 1 through 55, and allege against Defendant as follows.

57. Defendant has engaged and continue to engage in acts and practices of unfair competition, as that term is defined in Business & Professions Code section 17200, including unlawful, unfair or fraudulent business acts or practices.

58. Defendant engaged in unlawful acts and practices by failing to implement reasonable and adequate data security practices and procedures, as described herein, by obtaining Plaintiff's and Class members' PII with knowledge that the information would not be adequately protected; by storing Plaintiff's and Class members' PII in an unsecure electronic environment; and by failing to timely detect and report the Data Breach.

59. Defendant has violated Civil Code section 1798.81.5, which requires Defendant to take reasonable methods of safeguarding the PII of Plaintiff and the Class Members.

60. Defendant also engaged in unlawful acts and practices, by failing to disclose the data breach, including to Class Members in a timely and accurate manner, which violates Civil Code section 1798.82. To date, Defendant has still not provided full and accurate information

regarding the Data Breach to Plaintiff and the Class Members.

61. Defendant's business practices are unfair under the UCL because it has acted in a manner that is unethical, oppressive, and/or substantially injurious to Plaintiff and the Class Members. The exposure of their PII to third parties is substantially injurious because of the significant harm that can result. The harmful impact of Defendant's practice far outweighs any possible countervailing benefits.

62. On information and belief, Defendant received money or property to protect PII, for the benefit of Plaintiff and the Class, but failed to implement adequate security policies and practices.

63. As a result of Defendant's unlawful, unfair, or fraudulent business practices as alleged herein, Plaintiff suffered injury in fact and lost money or property. Among other things, Plaintiff and Class Members are entitled to recover the price received by Defendant for the services described herein, the loss of Class Members' legally protected interest in the confidentiality and privacy of their PII, and additional losses as described above.

64. Defendant knew or should have known that its computer systems and data security practices and procedure were inadequate to safeguard Class members' PII and that the risk of a data breach or theft was likely.

65. Pursuant to Business & Professions Code §§ 17203 and 17204, the Court may enjoin such conduct in the future on behalf of the Class and the general public; obtain a provision for a corrective notice; and compel Defendant to restore to Plaintiff and Class Members any money or property that Defendant may have acquired or retained as a result of any act or practice that constitutes unfair competition. Plaintiff further seeks an order requiring Defendant to disgorge any profits Defendant may have obtained as a result of their conduct.

66. Plaintiff seeks restitution to Plaintiff and Class Members of money or property that Defendant may have acquired by means of its business practices alleged herein, including monetary restitution and restitutionary disgorgement of all profits accruing to Defendant because of such practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief. Plaintiff and Class Members also

lost legally protected interest in the confidentiality and privacy of their PII, and suffered additional losses as described above.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all Class Members, request judgment against Audi and that the Court grant the following:

A. An order certifying the Class as defined herein, and appointing Plaintiff and her Counsel to represent the Class;

B. An order enjoining Audi from engaging in the wrongful conduct alleged herein concerning disclosure and inadequate protection of Plaintiff's and Class Members' PII;

C. An order instructing Defendant to purchase or provide funds for adequate credit monitoring services for Plaintiff and all Class Members;

D. An award of compensatory and statutory damages, in an amount to be determined, including statutory damages pursuant to the CCPA;

E. An award for equitable relief and restitution as a result of Audi's wrongful conduct;

F. An award of reasonable attorneys' fees, costs, and litigation expenses, as allowable by law;

G. Nominal damages; and

H. Such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial of all issues so triable.

DATED: June 18, 2021　　　　　　　　　　　　　　**RIGHETTI GLUGOSKI, P.C.**

　　　　　　　　　　　　　　　　　　　　　　　　　　Matthew Righetti
　　　　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*