# EXHIBIT B

MATTHEW RIGHETTI (SBN: 121012)
matt@righettilaw.com
**RIGHETTI GLUGOSKI, P.C.**
The Presidio of San Francisco
220 Halleck Street, Suite 220
San Francisco, CA 94129
Tel: (415) 983-0900
Fax: (415) 397-9005

Attorneys for Plaintiff and the Proposed Class

FILED
SEP 24 2021
JAMES M. KIM, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
*By: J. Chen, Deputy*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**MARIN COUNTY**

AMY WYNNE, individually, and on behalf of a class of similarly situated persons,

Plaintiff,

v.

AUDI OF AMERICA, AUDI OF AMERICA, LLC, SANCTUS LLC, DBA SHIFT DIGITAL, SHIFT DIGITAL, LLC, VOLKSWAGEN GROUP OF AMERICA, INC. and DOES 1-50 inclusive,

Defendants.

Case No. CIV 2102450

CLASS ACTION

**AMENDED COMPLAINT FOR:**

**(1) VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (Bus. & Prof. Code, § 17200)**

**(2) VIOLATION OF CCPA (Cal. Civ. Code § 1798.100 et seq.)**

Plaintiff Amy Wynne brings this lawsuit against Defendants, AUDI OF AMERICA, AUDI OF AMERICA, LLC, SANCTUS LLC, DBA SHIFT DIGITAL, SHIFT DIGITAL, LLC, VOLKSWAGEN GROUP OF AMERICA, INC. and DOES 1-50 inclusive ("Defendant" or "Defendant's") on behalf of herself and all others similarly situated ("Class" or "Class Members") for violation of their privacy rights. Plaintiff alleges, upon personal knowledge as to her own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. Defendants are the business of selling, marketing, leasing and repairing

automobiles. Defendants were entrusted with personal identifiable information ("PII")[1] of their customers and potential customers (collectively, "Customers").

2. Between August 2019 and May 2021, Defendants were the target of a massive data breach in which approximately 3.3 million Customers were subject to an unauthorized access and exfiltration, theft, or disclosure of their PII ("Data Breach"). Outside parties accessed a trove of personal details about Defendant's Customers—such as names, home and business addresses, emails addresses, driver's license numbers, social security numbers, and other information – stored on Defendant's servers. Despite the highly sensitive nature of the PII it was maintained by Defendants in a form that was neither encrypted nor redacted.

3. The Data Breach violated the fundamental privacy rights of Plaintiff and Class Members. Because of the Data Breach, Plaintiff and Class Members face an increased risk of identity theft.

4. Plaintiff brings this lawsuit on behalf of Class Members whose PII was compromised as a result of the Data Breach and Defendant's failure to (i) implement and maintain reasonable security procedures and practices appropriate to the nature of the PII; (ii) disclose its inadequate security procedures and practices; (iii) effectively monitor its systems for security vulnerabilities; and (iv) timely detect, report, and disclose the Data Breach.

5. Defendants' conduct, as alleged herein, was illegal and unfair thereby constituting an unfair business practice under California's Unfair Competition Law (Bus. & Prof. Code, § 17200) ("UCL").

## II. PARTIES

6. At all relevant times, Plaintiff Amy Wynne was and is a citizen of California, residing in Marin County. Ms. Wynne is a customer of Defendants. She entrusted her PII to Defendants. Ms. Wynne's PII was accessed and compromised as a result of the Data Breach. This resulted in an invasion of her privacy interests and has placed her at imminent, immediate,

---

[1] As used herein, the term "PII" is intended to include the definition of personal information provided under Civil Code sections 1798.140, subdivision (o), and 1798.81.5, subdivision(d)(1).

and continuing risk of further identity theft-related harm.

7. Defendants are entities doing business in California. Plaintiff is informed and believes and thereon alleges that (a) Audi of America is a division of Audi AG which is a wholly owned subsidiary of Volkswagen Group of America, Inc., and (b) Shift Digital, LLC is a wholly owned subsidiary of Sanctus, LLC headquartered at Agoura Hills, California.

8. Plaintiff does not know the true names and capacities of Defendants sued herein as Does 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes that each of the Doe Defendants was in some manner legally responsible for the damages alleged below. Plaintiff will amend this Complaint to set forth the true names and capacities of these Defendants when ascertained, along with appropriate charging allegations.

9. Plaintiff is informed and believe, and thereupon allege, that each of Defendants designated herein as a Doe is responsible in some actionable manner for the events and happenings referred to herein, and caused injuries to Plaintiffs, as hereinafter alleged, either through said Defendants' conduct, or through the conduct of their agents, servants, employees. The term "Defendant(s)" as used in this Complaint includes both the named Defendants and Defendants sued under the fictitious names of Does 1 through 50, inclusive.

10. Plaintiff is informed and believes and therefore alleges that, at all times relevant to this action, Defendants, and each of them, were the agents, servants, employees, assistants, and consultants of each of their co-Defendants, and were, as such, acting within the course of and scope of the authority of their agency and employment, and that each and every Defendant when acting as a principal, was negligent and careless in the selection and hiring of each and every co-Defendant as an agent, servant, employee, assistant and/or consultant.

## III. JURISDICTION AND VENUE

11. This Court has personal jurisdiction over Defendants because they do business in this jurisdiction. The claims of Plaintiff and the Class arise out of Defendants' business activity in California and, at all times herein mentioned, Defendants were performing services in California and/or pursuant to contracts entered into and/or performed in California.

12. Venue is proper in this Court because a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or emanated from Marin County. Venue is also proper because it was in Marin County where Plaintiff entrusted the PII of Plaintiff and other Class Members to Defendants. Venue is also proper under Business & Professions Code section 17203.

13. This is a class action brought pursuant to Code of Civil Procedure section 382, and this Court has jurisdiction over the Plaintiff's claims because the amount in controversy exceeds this Court's jurisdictional minimum.

## IV. FACTUAL ALLEGATIONS

14. Ms. Wynne is a customer of Volkswagen of America, Inc./Audi. As such and during the relevant time period covered by this Complaint, she entrusted Volkswagen of America, Inc./Audi with her PII as a part of her business transaction.

15. On March 10, 2021, Volkswagen of America, Inc./Audi were alerted that an unauthorized third party obtained its customers PPI. A third party obtained PPI from or about its customers and interested buyers from a vendor (Shift Digital, LLC and Sanctus, LLC, dba Shift Digital, LLC) used by Volkswagen of America, Inc./Audi, and some authorized dealers in the United States and Canada. This included information gathered for sales and marketing purposes from 2014 to 2019. The data was obtained when the vendor left electronic data unsecured at some point between August 2019 and May 2021.

16. According to the Notice of Data Breach sent by Volkswagen of America, Inc./Audi, approximately 3.3 million individual customers and interested buyers were affected by the Data Breach.

17. In the Notice of Data Breach, Volkswagen of America, Inc./Audi reports the Data Breach occurred at some point between August 2019 and May 2021 and was not reported until June 17, 2018.

18. As set forth in the Notice of Data Breach, the compromised PII of Plaintiff and the Class Members includes, without limitation, the following categories of highly sensitive information: (1) name; (2) home and business address; (3) email address; (4) driver's license

number; (5) social security number; (6) date of birth; (7) account and loan numbers; and (8) tax identification number.

19. The Data Breach subjected Plaintiff and the other Class Members to an unauthorized access and exfiltration, theft, or disclosure of their nonencrypted and nonredacted PII, including, but not limited to, PII that falls within the definition of subparagraph (A) of paragraph (1) of subdivision (d) of Civil Code section 1798.81.5.

20. The Data Breach resulted from Defendants' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the PII.

21. On information and belief, Defendants breached the standard of care by failing to implement reasonable security procedures to adequately protect Class Members' PII—which was not password protected, redacted, or encrypted—from data breaches. Data breaches, such as this one, are commonly made possible through a vulnerability in a system or server.

22. As a result of Defendants' lax security, outside parties have accessed Plaintiff's and Class Members' PII in a readily usable form that is potentially of great value to them. Plaintiff and Class Members are thus exposed to criminals seeking to use the PII for nefarious and illegal activities, such as identity theft schemes. Given the sensitive nature of the PII, Plaintiff and Class Members face a risk of identity theft.

23. At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if their data security system was breached.

24. Over the past several years, large data breaches, such as the one that occurred here, have garnered widespread media attention and have been the focus of protective legislation and scrutiny by law enforcement and the media. Ignoring the known risk, Defendants' approach to maintaining the security of the PII of Plaintiff and Class Members was well-below the standard of care.

25. As a result of the Data Breach, Plaintiff and the Class are subject to a higher risk of phishing and pharming, where hackers exploit information they have already obtained in an effort to procure even more PII. Moreover, Plaintiff and the Class now run the future risk of

unauthorized individuals creating credit cards in their names, taking out loans in their names, and engaging in other fraudulent conduct using their identities.

***California Recognizes the Importance of Protecting PII***

26. The CCPA affords California residents security protections and rights to learn about and control how a business handles their personal information. The Legislature requires businesses to implement adequate standards to protect PII:

> It is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information.

(Civ. Code, § 1798.81.5, subd. (a)(1).)

27. The CCPA further endows on California residents the right to bring an action for statutory damages if their information is subject to a data breach that is "a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information." (Civil Code, § 1798.150.)

***PII Is Valuable to Hackers and Thieves***

28. Hackers and criminals recognize the value of PII. Identity thieves use stolen PII for a variety of crimes, including credit card fraud, phone or utilities fraud, and financial fraud. PII can also be sold on the dark web or used to clone a credit card.

29. Once hackers obtain access to PII, it can then be used to gain access to different areas of the victim's digital life, including bank accounts, social media, and credit card details. Other sensitive data may be harvested from the victim's accounts, as well as from those belonging to family and friends.

30. Access to PII provides criminals further opportunity to hack into email accounts. Since most online accounts require an email address, not only as a username but also to verify accounts and reset passwords, a hacked email account can provide access to additional identity theft opportunities.

31. Hacked PII also allows thieves to obtain other personal information through

"phishing." According to the Report on Phishing available on the United States, Department of Justice's website: "AT&T, a large telecommunications company, had its sales system hacked into, resulting in stolen order information including full names and home addresses, order numbers, and credit card numbers. The hackers then sent each customer a highly personalized e-mail indicating that there had been a problem processing their order and re-directing them to a spoofed website where they were prompted to enter further information, including birthdates and Social Security numbers."[2]

32. Industry experts have reported that one in every three people who is notified of being a potential fraud victim becomes one. In the case of a data breach, simply reimbursing a consumer for a financial loss due to identity theft and fraud does not necessarily make that individual whole. The Department of Justice's Bureau of Justice Statistics ("BJS") has found, "among victims who had personal information used for fraudulent purposes" a significant percentage of victims spent a month or more resolving problems, with some even taking more than year.[3]

33. A person whose PII has been obtained and compromised may not know or experience the full extent of identity theft or fraud for years. In addition, a victim may not become aware of fraudulent charges when they are nominal because typical fraud-prevention algorithms fail to capture such charges. Those charges may be repeated, over and over, without detection.

***Annual Monetary Losses from Identity Theft are in the Billions of Dollars***

34. Losses from identity theft reached $21 billion in 2013. (*See* 2013 Javelin Strategies Identity Fraud Report.) According to the BJS, an estimated 17.6 million people were victims of one or more incidents of identity theft in 2014.

35. There often can be a time lag between the theft of PII and when the harm occurs

---

[2] https://www.justice.gov/archive/opa/docs/report_on_phishing.pdf (accessed on August 24, 2020).

[3] "Victims of Identity Theft," U.S. Department of Justice, Dec 2013, available at https://www.bjs.gov/content/pub/pdf/vit12.pdf (accessed on August 24, 2020).

or is discovered. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[4]

36. As a direct and proximate result of the Data Breach caused by Defendant's wrongful actions and inaction, Plaintiff and Class Members have been placed at risk of harm from identity theft and identity fraud. They are subject to a higher risk of phishing and pharming schemes, through which hackers exploit the ill-gotten PII to procure additional private information. In addition, Plaintiff and Class Members run the risk of unauthorized individuals creating credit cards in their names, taking out loans in their names, and engaging in other fraudulent conduct using their identities.

## V. CLASS ALLEGATIONS

37. Plaintiff bring this action on their own behalf and on behalf of a class of individuals pursuant to CCP 382. Plaintiff intends to seek certification of a class defined as follows:

> **All Volkswagen of America, Inc./Audi customers and interested buyers residing in California whose PII was accessed or otherwise compromised in the Data Breach, which, according to the Notice of Data Breach provided by Volkswagen of America, Inc./Audi, occurred at some point between August 2019 and May 2021.**

Excluded from the Class are the following individuals and/or entities: Defendants and their parents, subsidiaries, affiliates, officers and directors, current or former employees, attorneys

---

[4] See GAO, Report to Congressional Requesters, at 33 (June 2007), available at http://www.gao.gov/new.items/d07737.pdf (accessed on August 24, 2020).

representing Defendants in this action, and any entity in which Defendants have a controlling interest and all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out.

38. **Numerosity**. The members of the Class are so numerous that joinder of all Class Members is impractical. While the exact number of Class Members is unknown to Plaintiff at this time, Defendant's Notice of Data Breach states that approximately 3.3 million individuals are involved. It is unknown at this time how many of those 3.3 million individuals are California residents but, on information and belief, Plaintiff alleges that the number of Class Members is at least in the tens of thousands. Class Members are readily identifiable from information and records maintained by Volkswagen of America, Inc./Audi.

39. **Commonality and Predominance.** This action involves questions of law and fact common to Class Members that predominate over any questions affecting individual Class Members. These common questions of law and fact include, without limitation:

a. When Defendants actually learned of the Data Breach;

b. Whether Defendants adequately detected, disclosed and responded to the Data Breach;

c. Whether Defendants owed a duty to the Class to exercise due care in collecting, encrypting, password protecting, storing, safeguarding and/or maintaining their PII;

d. Whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of the PII;

e. Whether Defendants breached the duty of care;

f. Whether Defendants knew or should have known that they did not employ reasonable measures to keep Plaintiff's and Class Members' PII secure and prevent loss or misuse of that PII;

g. Whether Defendants adequately addressed and fixed the vulnerabilities that permitted the Data Breach to occur;

h. Whether Defendants violated the law by failing to promptly notify Class Members that their PII had been compromised;

i. Whether Plaintiff and the other Class Members are entitled to injunctive relief and statutory damage monetary relief;

j. Whether Defendants violated California's UCL by failing to implement reasonable security procedures and practices;

40. **Typicality**: Plaintiff's claims are typical of those of other Class Members because all had their PII accessed and compromised as a result of the Data Breach, due to Defendants' wrongful conduct, acts, or omissions.

41. **Adequacy**: Plaintiff's interests are not antagonistic and do not irreconcilably conflict with the interests of the Class. Plaintiff is represented by attorneys who are competent and experienced in consumer and privacy-related class action litigation.

42. **Superiority and Manageability**: A class action is superior to other available group-wide methods for the fair and efficient adjudication of this controversy because the individual damage and harm suffered by each individual Class Member may be relatively small compared to the expense and burden of prosecuting such an individual case, and the difficulty of discovering and remedying the wrongdoing of Audi. If individual Class Members were required to bring separate actions, courts would be confronted by a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

43. Defendants acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or declaratory relief appropriate with respect to the Class as a whole.

44. Notice of the pendency of and any resolution of this action can be provided to the Class members by individual mailed notice or the best notice practicable under the

circumstances.

**FIRST CAUSE OF ACTION**

[Violation of California's Unfair Competition Law
Cal. Bus. & Prof. Code §17200 – Unlawful Business Practices]

45. Plaintiff re-alleges herein all the previous allegations contained herein and allege against Defendants as follows.

46. Defendants have engaged and continue to engage in acts and practices of unfair competition, as that term is defined in Business & Professions Code section 17200, including unlawful, unfair or fraudulent business acts or practices.

47. Defendants engaged in unlawful acts and practices by failing to implement reasonable and adequate data security practices and procedures, as described herein, by obtaining Plaintiff's and Class members' PII with knowledge that the information would not be adequately protected; by storing Plaintiff's and Class members' PII in an unsecure electronic environment; and by failing to timely detect and report the Data Breach.

48. Defendants violated – and continue to violate -- Civil Code section 1798.81.5, which requires Defendants to take reasonable methods of safeguarding the PII of Plaintiff and the Class Members.

49. Defendants engaged in unlawful acts and practices, by failing to promptly disclose the Data Breach, including to Class Members in a timely and accurate manner, which violates Civil Code section 1798.82. To date, Defendants have still not provided full and accurate information regarding the Data Breach to Plaintiff and the Class Members.

50. Defendants' business practices are unfair under the UCL because it has acted in a manner that is unethical, oppressive, and/or substantially injurious to Plaintiff and the Class Members. The harmful impact of Defendants' practices far outweigh any possible countervailing benefits.

51. On information and belief, Defendants received money or property to protect PII, for the benefit of Plaintiff and the Class, but failed to implement adequate security policies and

practices.

52. Defendants knew or should have known that its computer systems and data security practices and procedure were inadequate to safeguard Plaintiff and Class members' PII and that the risk of a data breach or theft was likely.

53. Pursuant to Business & Professions Code §§ 17203 and 17204, the Court may enjoin such conduct in the future on behalf of the Class and the general public and obtain a provision for a corrective notice.

54. Plaintiff seeks declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

**<u>SECOND CAUSE OF ACTION</u>**

[Violation of the California Consumer Privacy Act ("CCPA"),
Cal. Civil Code Sec. 1798.150, et seq.]

55. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though repeated here.

56. Civil Code section 1798.150, subdivision (a)(1), provides,

> Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:
>
> (A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.
>
> (B) Injunctive or declaratory relief.
>
> (C) Any other relief the court deems proper.

57. On information and belief, Defendants took possession, retained, stored, and maintained a database containing the nonencrypted and nonredacted PII of Plaintiff and the Class. Defendants collects or receives such information and alone, or jointly with others, determines the purposes and means of the processing of such PII.

58. As a result of the widespread Data Breach nonredacted and nonencrypted PII of Plaintiff and thousands of other Class Members that was stored on that server was compromised, accessed, and subject to exfiltration, theft or disclosure.

59. The Data Breach subjected Plaintiff and the other Class Members to an unauthorized access and exfiltration, theft, or disclosure of their nonencrypted and nonredacted PII, including, but not limited to, PII that falls within the definition of subparagraph (A) of paragraph (1) of subdivision (d) of Civil Code section 1798.81.5.

60. The Data Breach was a result of Defendants' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

61. Due to the Data Breach, Plaintiff and the Class Members seek – and are entitled to recover – statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per Class Member per incident as well as injunctive or declaratory relief.

62. Prior to filing this CCPA claim, Plaintiff provided thirty days written notice to Defendants, "identifying the specific provisions of the CCPA the consumer [Plaintiff] allege[] have been or are being violated." Defendants could not and did not adequately cure the violations within the time provided under the CCPA; compensate Plaintiff and the Class or otherwise provide any remedy for the harm caused by the violations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all Class Members, request judgment against Defendants and that the Court grant the following:

A. An order certifying the Class as defined herein, and appointing Plaintiff and her Counsel to represent the Class;

B. An order enjoining Defendants from engaging in the wrongful conduct alleged herein concerning disclosure and inadequate protection of Plaintiff's and Class Members' PII;

C. An award of statutory damages pursuant to the CCPA;

D. An award for equitable relief to protect Plaintiff and Class Members' PII which has been placed at risk as a result of Defendants wrongful conduct;

E. An award of reasonable attorneys' fees, costs, and litigation expenses, as allowable by law;

F. Such other and further relief as this Court may deem just and proper.

DATED: September 24, 2021

**RIGHETTI GLUGOSKI P.C.**

Matthew Righetti
*Attorneys for Plaintiff*